**SIGNED THIS: December 29, 2016**

_____
**Mary P. Gorman**
**United States Chief Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 15-71944 |
| DAVID C. MARQUARDT, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| AMERICASH LOANS, LLC | ) | |
| d/b/a AmeriCashLoans.net, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 16-07008 |
| | ) | |
| DAVID C. MARQUARDT, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| In Re | ) | |
| | ) | Case No. 16-70161 |
| TANIKA M. McCOOL and | ) | |
| CARLOS K. JONES, | ) | |
| | ) | Chapter 7 |
| Debtors. | ) | |

|  |  |  |
|---|---|---|
| AMERICASH LOANS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 16-07012 |
| | ) | |
| CARLOS K. JONES, | ) | |
| | ) | |
| Defendant. | ) | |

---

# O P I N I O N

Before the Court are complaints to determine the dischargeability of debts in two separate adversary proceedings brought by AmeriCash Loans, LLC ("AmeriCash"), against unrelated debtors, David C. Marquardt and Carlos K. Jones. AmeriCash claims that the loans made to Mr. Marquardt and Mr. Jones (together "Debtors") before their bankruptcy filings should be excepted from each of their discharges because of misrepresentations made by each Debtor in obtaining the loans. Because AmeriCash failed to meet its burden of proof as to either Debtor, judgment will be entered against it and in favor of the Debtors in each proceeding.

## I. Factual and Procedural Background

Because the same legal issues were raised in each of these proceedings, they have been consolidated for purposes of this Opinion. Each proceeding, however, arises from a distinct bankruptcy case and involves an independent set of facts.

### A. David C. Marquardt

David Marquardt signed and filed his voluntary Chapter 7 petition on December 31, 2015. According to his Statement of Financial Affairs ("SOFA") filed with his bankruptcy petition, Mr. Marquardt paid his bankruptcy attorney $1038 on June 26, 2015. In amended schedules, Mr. Marquardt listed an unsecured debt owed to AmeriCash in the amount of $1200 for what he reported was an October 2015 installment loan.

AmeriCash filed a Complaint Objecting to the Dischargeability of Indebtedness asserting that the debt owed to it by Mr. Marquardt was obtained by fraud and was therefore nondischargeable. Specifically, AmeriCash alleged that on November 14, 2015, Mr. Marquardt applied for and entered into a consumer loan agreement ("Agreement") in the amount of $1200, which was paid out to Mr. Marquardt on December 7, 2015. AmeriCash claimed that by entering into the Agreement, Mr. Marquardt represented that he intended to repay the loan. AmeriCash further claimed that it justifiably relied on Mr. Marquardt's representation and incurred damages when Mr. Marquardt failed to make any payment on the loan prior to filing bankruptcy. Attached to the complaint was the purported Agreement dated December 4, 2015, containing the typewritten name of "David Marquardt" in the signature line.

Mr. Marquardt did not respond to the complaint and AmeriCash moved for an entry of default and default judgment, which was followed by its Amended Motion for Default Judgment, Entry of Default Order and Entry of Default Judgment Order ("Default Motion"). At a hearing on the Default Motion, the Court informed AmeriCash that it would not rubberstamp a default judgment, explaining

that it had a duty to independently review the sufficiency of the evidence in support of the complaint. Noting that the only alleged misrepresentation AmeriCash claimed it relied on was Mr. Marquardt's promise to repay the loan, the Court set an evidentiary hearing for August 9, 2016.

Less than a week before the scheduled evidentiary hearing, AmeriCash filed an Amended Complaint Objecting to the Dischargeability of Indebtedness ("Marquardt Amended Complaint"), again alleging that by entering into the Agreement, Mr. Marquardt represented that he would repay the loan. The Amended Complaint also asserted that Mr. Marquardt made a false representation to AmeriCash regarding his intention to file bankruptcy, which AmeriCash claims made the debt nondischargeable under §523(a)(2)(A). In an additional count, the Amended Complaint alleged that the debt was presumed to be nondischargeable under §523(a)(2)(C)(II) because the loan was a cash advance aggregating more than $750 that was an extension of consumer credit under an open end credit plan obtained on or within 70 days before the order for relief under the Code.[1] Attached to the Amended Complaint was a copy of the Agreement.

At the August 9th hearing, counsel for AmeriCash informed the Court that he was not prepared to put on evidence, stating instead that the Amended Complaint and attached documents spoke for themselves. The Court reminded

---

[1] The citation to the Code provision AmeriCash attempts to invoke is actually §523(a)(2)(C)(i)(II). Moreover, AmeriCash cites the $750 figure that was applicable to cases commenced following the enactment of the BAPCPA in 2005. The dollar amounts set forth in §523(a)(2)(C), however, are subject to regular adjustment pursuant to §104, with $925 being the applicable amount at the time the Debtor filed his Chapter 7 petition. *See* Revision of Certain Dollar Amounts in the Bankruptcy Code, 81 Fed. Reg. 8748-01 (Feb. 22, 2016).

counsel that it would not rubberstamp a default judgment and that he would need to present evidence to support AmeriCash's allegations, including evidence of how AmeriCash justifiably relied on any representations made by Mr. Marquardt. The Court also questioned whether AmeriCash could proceed on its new claim made pursuant to §523(a)(2)(C), as debts on payday loans are not included in the definition of an "open end credit plan" that would be entitled to a presumption under the subsection. AmeriCash was given an opportunity to brief the issue and all matters were reset for evidentiary hearing on October 11, 2016.

AmeriCash subsequently filed its Memorandum of Law in Support of Plaintiff's Motion for Default Judgment, conceding that the debt in question did not meet the statutory definition of an extension of credit under an open end credit plan as is required by §523(a)(2)(C). AmeriCash maintained, however, that the elements of §523(a)(2)(A) were met, arguing that Mr. Marquardt misrepresented his intention to file bankruptcy in applying for and entering into the Agreement.

At the October 11th evidentiary hearing on the Default Motion and Amended Complaint, AmeriCash offered testimony from Brenda Ferguson, AmeriCash's branch manager in Springfield, Illinois. Ms. Ferguson testified that she is familiar with the application procedures for potential AmeriCash customers, and that as part of that process, such customers are required to make certain representations to AmeriCash, including whether they have filed or intend to file for bankruptcy protection. Information regarding whether an applicant has filed bankruptcy is confirmed by a search of the public records. Ms. Ferguson further testified that she had access to the customer files maintained by AmeriCash and she identified

the Agreement related to Mr. Marquardt's loan. She testified that, when a loan is made, the terms and conditions are reviewed with the borrower and that she had no reason to believe that the required procedures were not followed with respect to Mr. Marquardt. One term of the Agreement is a representation that the borrower has no intention of filing a bankruptcy petition.

Although she stated that she has access to AmeriCash files, Ms. Ferguson did not testify that she had reviewed Mr. Marquardt's customer file or that she had personal knowledge of the circumstances of his loan application and approval. To the contrary, she admitted that her testimony was limited to what is normally done in the application process and not based on any knowledge whatsoever of what actually occurred in Mr. Marquardt's case.

Ms. Ferguson was asked by the Court whether she had a copy of the Agreement with Mr. Marquardt's actual signature on it. In response, she stated that he had applied online and that a customer service representative would have called Mr. Marquardt as part of the loan process and read the terms of the Agreement to him. AmeriCash's attorney asserted that under Illinois law, electronic signatures are valid. When asked for any evidence that Mr. Marquardt had, in fact, signed the Agreement electronically, however, he produced no further documents or testimony.

At the close of testimony, the Agreement was admitted into evidence. AmeriCash's attorney stated that he would rely on his previously filed memorandum of law and submitted no closing argument. Mr. Marquardt was present in the courtroom during the hearing but did not participate in the hearing.

### B. Carlos K. Jones

Carlos K. Jones and Tanika M. McCool filed their voluntary Chapter 7 petition on February 10, 2016. According to the SOFA filed with their petition, Mr. Jones and Ms. McCool had paid their bankruptcy attorney $365 within one year before filing for bankruptcy, although the date of the payment was not indicated. They also listed an unsecured nonpriority debt owed to AmeriCash in the amount of $720, which was described as a payday loan. Their schedules do not indicate when the debt was incurred.

AmeriCash filed a Complaint Objecting to the Dischargeability of Indebtedness against Mr. Jones ("Jones Complaint"). In the Jones Complaint, AmeriCash alleged that the debt owed to it by Mr. Jones was obtained by fraud and was therefore nondischargeable under §523(a)(2)(A) and (C). Specifically, AmeriCash alleged that, on December 21, 2015, Mr. Jones applied for and entered into a consumer loan agreement ("Agreement") in the amount of $2500, representing to AmeriCash that he intended and was able to repay the loan. AmeriCash further claimed that it justifiably relied on Mr. Jones' representations and incurred damages when Mr. Jones failed to make any payment on the loan prior to filing for bankruptcy. In addition to claiming that the debt was nondischargeable under §523(a)(2)(A), AmeriCash also asserted that the debt was presumptively nondischargeable under §523(a)(2)(C)(II) because it was a cash advance aggregating more than $750 that was an extension of consumer credit under an open end credit plan obtained on or within 70 days before the order for relief under the Code.[2] Mr. Jones did not respond to the Complaint.

---

[2] See footnote 1 *supra.*

At an August 9, 2016 status hearing, the Court expressed the same concerns raised in the Marquardt proceeding about AmeriCash's status as a payday lender and whether it would be able to proceed on a cause of action under §523(a)(2)(C). The Court questioned whether a payday loan could be an "open end credit plan" as required to raise the presumption AmeriCash was relying on and provided AmeriCash's attorney with citation to case law suggesting that the presumption could not apply to the loans. AmeriCash's attorney responded by stating that a Chicago bankruptcy judge had recommended pleading the applicability of the presumption to its loan transactions because the allegations of misrepresentation it was making, based solely on a failure to pay, were otherwise insufficient to prevail. AmeriCash was given an opportunity to brief the issues and the matter was reset for evidentiary hearing on October 11, 2016.

AmeriCash subsequently filed its Memorandum of Law in Support of Plaintiff's Complaint Objecting to the Dischargeability of Indebtedness, conceding that the debt did not meet the statutory definition of an extension of credit under an open end credit plan that would entitle it to a presumption of nondischargeability under §523(a)(2)(C). Still wishing to proceed under §523(a)(2)(A), however, AmeriCash argued in its brief that Mr. Jones misrepresented his intention to file for bankruptcy protection in obtaining the loan. Attached to the memorandum were Mr. Jones' January 12, 2016 credit counseling certificate, the portion of Mr. Jones' SOFA indicating the prepetition payment to his bankruptcy attorney, and a copy of the purported Agreement dated December 21, 2015, containing the typewritten name of "carlos jones," on the signature line.  The Agreement included a representation that the borrower did not

- 8 -

intend to file bankruptcy.

At the October 11th evidentiary hearing on the Jones Complaint, AmeriCash offered the testimony of Springfield branch manager Brenda Ferguson. As in the Marquardt proceeding, Ms. Ferguson testified that she was familiar with the application process for AmeriCash customers. She stated that when an application is received, AmeriCash runs a public records search to determine whether the applicant has filed a bankruptcy petition. In addition, Ms. Ferguson testified that when a customer applies for a loan online, they must check a box indicating that they do not intend to file for and do not have a pending bankruptcy. According to Ms. Ferguson, AmeriCash relies on these representations. She stated that when a customer applies for a loan online, a representative of AmeriCash will follow-up with the customer by telephone and go over the loan terms with them. Ms. Ferguson testified that she has access to the files maintained for AmeriCash customers. She did not, however, testify that she had reviewed the customer file of Mr. Jones, and conceded that she had no personal knowledge as to the transaction between AmeriCash and Mr. Jones.

At the conclusion of the hearing, the Agreement was admitted into evidence but no other documents authenticating the electronic signature of Mr. Jones were presented. Although Ms. Ferguson testified that Mr. Jones would have checked boxes during the loan application process to make the representations AmeriCash allegedly relied on, no documents with any boxes to check were presented. Again, AmeriCash's attorney relied on his memorandum of law previously filed and offered no closing argument. Mr. Jones was not present at the hearing.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). The determination of the dischargeability of a particular debt is a core proceeding. 28 U.S.C. §157(b)(2)(I). These matters arise from the Debtors' bankruptcies themselves and from the provisions of the Bankruptcy Code, and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

## III. Legal Analysis

### A. Default Judgment Standards

The entry of default judgments is governed by Federal Rule of Civil Procedure 55, as made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7055. *See* Fed. R. Civ. P. 55; Fed. R. Bankr. P. 7055. A movant is not entitled to a default judgment as a matter of right, even though a debtor is in default for failing to answer or otherwise respond to a complaint. *AT & T Universal Card Servs. v. Sziel (In re Sziel)*, 206 B.R. 490, 493 (Bankr. N.D. Ill. 1997) (citing *Wells Fargo Bank v. Beltran (In re Beltran),* 182 B.R. 820, 823 (B.A.P. 9th Cir. 1995)); *see also New Austin Roosevelt Currency Exch. v. Sanchez (In re Sanchez),* 277 B.R. 904, 907 (Bankr. N.D. Ill. 2002) (citing *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001)). The granting of a default judgment lies within the sound discretion of the court. *Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 252 (7th Cir. 1990) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.,*

722 F.2d 1319, 1322 (7th Cir. 1983)).

This Court has previously discussed the entry of default judgments in the context of adversary proceedings in bankruptcy. *See First Bankers Trust Co. v. Dade (In re Dade)*, 2012 WL 1556510, at *1 (Bankr. C.D. Ill. May 1, 2012). In *Dade*, the Court explained that in "bankruptcy, where a debtor has a presumptive right to a discharge, default motions should not be granted unless the movant demonstrates that its debt is nondischargeable as a matter of law." *Id.* at *4 (citing *Sanchez*, 277 B.R. at 907 (citing *Valley Oak Credit Union v. Villegas (In re Villegas)*, 132 B.R. 742, 746 (B.A.P. 9th Cir. 1991) (court must determine whether a plaintiff is entitled to judgment); *Lovell v. McArthur (In re McArthur)*, 258 B.R. 741, 746 (Bankr. W.D. Ark. 2001) (noting that bankruptcy courts have taken a conservative approach and sometimes refrain from granting default judgment motions which deprive debtors of discharge)); *Attorneys' Title Ins. Fund, Inc. v. Zecevic (In re Zecevic)*, 344 B.R. 572, 576 (Bankr. N.D. Ill. 2006)). The policy underlying these decisions is to minimize the risk that lenders may coerce settlements or obtain default judgments against unrepresented and cash poor consumers, regardless of the merits of the complaint. *See Sziel*, 206 B.R. at 492; *Mercantile Bank v. Canovas*, 237 B.R. 423, 427 (Bankr. N.D. Ill. 1998). It is for that reason that the Court will enter judgment only if the evidence submitted establishes a *prima facie* case for nondischargeability. *See Dade*, 2012 WL 1556510, at *4; *Canovas*, 237 B.R. at 427.

As AmeriCash must establish a *prima facie* case for nondischargeability regardless of whether it seeks a default judgment or a judgment on the merits, the Default Motion in the Marquardt proceeding will be discussed with the

Marquardt Amended Complaint and the Jones Complaint.

## B. Nondischargeability Under §523(a)(2)

AmeriCash has alleged that the debts owed to it by the Debtors are nondischargeable on a mix of legal theories under §523(a)(2). Section 523(a)(2) provides in relevant part:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

* * * *

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

* * * *

(C)(i) for purposes of subparagraph (A)—

* * * *

(II) cash advances aggregating more than $925 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 70 days before the order for relief under this title, are presumed to be nondischargeable; and

(ii) for purposes of this subparagraph—

(I) the terms 'consumer', 'credit', and 'open end credit plan'

have the same meanings as in section 103 of the Truth in

Lending Act[.]

11 U.S.C. §523(a)(2)(A), (C).

A party seeking to establish an exception to the discharge of a debt generally
bears the burden of proving each element of the claim by a preponderance of the
evidence. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991). Exceptions to discharge
are construed strictly against a creditor and liberally in favor of a debtor. *Ojeda
v. Goldberg*, 599 F.3d 712, 718 (7th Cir. 2010); *Goldberg Sec., Inc. v. Scarlata (In
re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992).

*i. Presumption of Nondischargeability - § 523(a)(2)(C)(i)(II).*

As a preliminary matter, it is necessary to address AmeriCash's asserted
claim of presumed nondischargeability under §523(a)(2)(C)(i)(II), which it now
concedes is not applicable to either Debtor. In order for the presumption of
nondischargeability to apply to a debt under §523(a)(2)(A), not only must the debt
arise from a cash advance aggregating more than $925 within 70 days before the
case filing, it must also be an extension of consumer credit under an open end
credit plan as that term is defined in section 103 of the Truth in Lending Act
("TILA"). 11 U.S.C. §523(a)(2)(C)(i)(II), (ii)(I). TILA's definition of an "open end credit
plan" does not specifically refer to payday loans. Truth in Lending Act, Pub. L. No.
90-321, §103, 82 Stat. 147 (codified as amended at 15 U.S.C. §1602). Sections
1637 and 1638 of TILA, however, differentiate between open end credit plans and
transactions other than under an open end credit plan. *See* 15 U.S.C. §§1637-38.
Section 1637 deals with open end consumer credit plans, while §1638

encompasses all other consumer loans, including payday loans. *See* 15 U.S.C. §§1637-38; *Brown v. Payday Check Advance, Inc.*, 202 F.3d 987, 991 (7th Cir. 2000). Open end consumer credit loans generally involve revolving credit lines such as credit cards. *Brown*, 202 F.3d at 991. Payday loans have fixed payment dates and thus are closed end transactions. *See* 815 ILCS 122/1-10; 815 ILCS 122/2-5(c). Payday loans are not open end credit plans as defined by TILA and are not entitled to any presumption of nondischargeability under §523(a)(2)(C).

At the August 9th hearings held in both proceedings, the Court expressed concerns about AmeriCash's asserted claims, including whether they were entitled to a presumption of fraud under §523(a)(2)(C). When asked for authority for treating the payday loans as open end credit plans, AmeriCash's attorney's only justification for the pleading was the alleged gratuitous advice of a Chicago bankruptcy judge. And despite the fact that the Agreements clearly provide that they are subject to the Illinois Payday Loan Reform Act, contain other disclosures required by both the Payday Loan Reform Act and §1638 of TILA, and are unquestionably subject to both laws, AmeriCash's attorney asserted that the loans in question were not payday loans because they were not given in exchange for a post-dated check. Only after being given an opportunity to research the issue and being required to submit a brief did AmeriCash concede that the loans were not open end credit plans under TILA and therefore not entitled to a presumption of nondischargeability under §523(a)(2)(C).

Federal Rule of Bankruptcy Procedure 9011, provides that by presenting any pleading, motion, or other paper to the court, an attorney certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry

reasonable under the circumstances[,] . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing, existing law or for establishing new law[.]" Fed. R. Bankr. P. 9011(b)(2). Very little research was required to confirm that loans subject to the Payday Loan Reform Act do not qualify as open end credit plans that would be entitled to the presumption created by §523(a)(2)(C). The Court does not believe that AmeriCash's attorney did any research prior to asserting the claims under §523(a)(2)(C) in these proceedings and counsel's comments at the August 9th hearings tend to justify that belief.

AmeriCash and its counsel are admonished that strict adherence to Rule 9011 is required. The debts for which AmeriCash seeks a determination of nondischargeability clearly do not fall within the presumption under §523(a)(2)(C), and AmeriCash was never justified in pleading that the presumption applied.


*ii. Nondischargeability under 523(a)(2)(A).*

In order to prevail on its §523(a)(2)(A) claim, AmeriCash must prove that: (1) the Debtor made a false representation or omission which the Debtor either knew was false or which the Debtor made with reckless disregard for the truth; (2) the Debtor intended to deceive or defraud; and (3) AmeriCash justifiably relied on the false representation. *See* 11 U.S.C. §523(a)(2)(A); *Field v. Mans*, 516 U.S. 59, 74-75 (1995); *Ojeda*, 599 F.3d at 716-17.

As a starting point, it must be determined whether Mr. Jones or Mr. Marquardt even made the misrepresentations alleged by AmeriCash. In each proceeding, AmeriCash offered as evidence a copy of an Agreement containing a

signature of an AmeriCash employee and the typewritten name of the Debtor. Under the Illinois Payday Loan Reform Act, all payday loan agreements must be in writing and signed by both parties. 815 ILCS 122/2-35(h). Each Agreement recites that it is subject to the Illinois Payday Loan Reform Act and therefore the Agreements are only enforceable if they were signed by both parties.

Because neither Agreement contained an actual signature of one of the Debtors, AmeriCash's attorney asserted that electronic signatures are valid under Illinois law. That is true if, in fact, a document has been electronically signed. Under the Illinois Electronic Commerce Act, "[w]here a rule of law requires a signature, or provides for certain consequences if a document is not signed, an electronic signature satisfies that rule of law." 5 ILCS 175/5-120(a). And generally, "nothing in the application of the rules of evidence shall apply so as to deny the admissibility of an electronic record or electronic signature into evidence: (1) on the sole ground that it is an electronic record or electronic signature; or (2) on the grounds that it is not in its original form or is not an original." 5 ILCS 175/5-130(a).

Although neither Mr. Jones nor Mr. Marquardt responded to the allegations against them and have not challenged the admissibility of the Agreements, AmeriCash is still required to lay a foundation for their authenticity, despite their admission at trial.[3] *See* Fed. R. Evid. 901; *see also Pearson v. United Debt*

---

[3] In a bench trial, the "judge has the flexibility to provisionally admit testimony or evidence and then discount or disregard it if upon reflection it is entitled to little weight or should not have been admitted at all." *Bone Care Int'l, LLC v. Pentech Pharmaceuticals, Inc.*, 2010 WL 3894444, at *1 (N.D. Ill. Sept. 30, 2010) (citations omitted); *see also SmithKlineBeecham Corp. v. Apotex, Corp.*, 247

*Holdings, LLC*, 123 F. Supp. 3d 1070, 1073-74 (N.D. Ill. 2015) (failure to properly authenticate evidence is sufficient to preclude the court from considering it, even if the evidence would have been admissible but for the failure to authenticate (citing *Estate of Brown v. Thomas*, 771 F.3d 1001, 1005-06 (7th Cir. 2014)). "An electronic signature may be proved in any manner, including by showing that a procedure existed by which a party must of necessity have executed a symbol or security procedure for the purpose of verifying that an electronic record is that of such party in order to proceed further with a transaction." 5 ILCS 175/5-120(b). This can be done through the testimony of a witness with knowledge. *See* Fed. R. Evid. 901.

AmeriCash called a single witness in each proceeding—Brenda Ferguson. Ms. Ferguson testified generally about the application process for obtaining loans. However, she provided no testimony, and AmeriCash offered no other evidence, of how electronic signatures are executed, verified, or maintained. Ms. Ferguson admitted that she did not personally review the applications or Agreements with either Debtor. And while she did state that she had access to customer files and records, she provided no testimony that she had reviewed or was familiar with the Debtors' specific case files or records maintained by AmeriCash. Put simply, Ms. Ferguson's testimony was unhelpful in determining whether the Debtors signed the Agreements and whether, in doing so, they made the alleged

---

F. Supp. 2d 1011, 1042 (N.D. Ill. 2003) (Posner, J.) ("In a bench trial it is an acceptable alternative to admit evidence of borderline admissibility and give it the (slight) weight to which it is entitled"), *vacated upon rehearing en banc and aff'd on other grounds*, 403 F.3d 1331 (Fed. Cir. 2005).

misrepresentations. She had no knowledge of whether either Debtor signed the Agreements and, apparently, she made no effort to find out what AmeriCash's records might show about their signatures before she testified. In the absence of any evidence that either Debtor signed an Agreement, no finding can be made that either Debtor made the specific representations contained in the Agreements.

Of course, AmeriCash could have offered proof that the alleged misrepresentations were made by the Debtors through oral statements made on the phone or through the online loan application process. But AmeriCash failed to call any witnesses with actual knowledge of the application process for either Debtor and did not compel either Debtor to attend the hearing to testify. Having offered no proof that the Debtors actually made the alleged misrepresentations, AmeriCash cannot prevail.

There are other problems with AmeriCash's case. For example, even if there had been some proof that either Debtor had actually represented that he was not intending to file bankruptcy, such representations are generally not given much weight in proceedings such as these. In fact, courts in this circuit have held that a representation of having no intention to file bankruptcy is entitled to no weight in establishing the dischargeability of a debt. *See I Need Cash, Inc. v. Powell (In re Powell)*, 2011 WL 5101753, at *4 (Bankr. C.D. Ill. Oct. 27, 2011) (Perkins, J.); *In re Sasse*, 438 B.R. 631 (Bankr. W.D. Wis. 2010). This is so because, regardless of its truth or falsity or the debtor's intent, "it is tantamount to a prepetition waiver of the right to a discharge in bankruptcy." *Powell*, 2011 WL 5101753, at *4; *see also Klingman v. Levinson*, 831 F.2d 1292, 1296 n.3 (7th Cir. 1987) (it is against

policy for a debtor to contract away the right to a discharge in bankruptcy).

Likewise, a promise to pay in the future is generally not the type of representation that can support a claim for nondischargebility. For purposes of determining dischargeability under §523(a)(2)(A), a debtor's representation must relate to a past or existing fact. *Dade*, 2012 WL 1556510, at *5 (citations omitted); *Powell*, 2011 WL 5101753, at *4. Ordinarily, a representation may not be based upon a failure to perform or an agreement to do or not do something in the future. *Powell*, 2011 WL 5101753, at *4. "Only where the debtor never intended to perform at the time he made the promise will the misstatement of intention constitute a fraudulent misrepresentation." *Id.* (citations omitted).

AmeriCash contends that the Debtors misrepresented their intention to repay their loans in accordance with the terms of the Agreements. But "[a] broken promise to pay a debt does not, without more, render the debt nondischargeable." *Powell*, 2011 WL 5101753, at *5 (citation omitted). Rather, AmeriCash "must establish that at the time the loan was obtained there existed no intent on the part of the [D]ebtor to repay the debt." *Id.* An intent to deceive may be established through direct evidence or inference. *In re Sheridan*, 57 F.3d 627, 633 (7th Cir. 1995). The existence of fraud may be inferred if the totality of the circumstances presents a picture of deceptive conduct by the debtor that indicates he intended to deceive or cheat the creditor. *Cripe v. Mathis (In re Mathis)*, 360 B.R. 662, 666 (Bankr. C.D. Ill. 2006); *Shelby Shore Drugs, Inc. v. Sielschott (In re Sielschott)*, 332 B.R. 570, 572 (Bankr. C.D. Ill. 2005) (Lessen, J.).

AmeriCash's allegations are essentially based on timing. In both cases,

-19-

AmeriCash contends that the Debtors incurred the debt within the month or two preceding bankruptcy, which it suggests is indicative of the Debtors' intent not to repay their loans. The only evidence it offered in either proceeding, however, was the testimony of Brenda Ferguson—which provided no insight into the Debtors' subjective intent—and a copy of the Agreement, which, as discussed above, was not authenticated and will not be considered on the issue of misrepresentation. AmeriCash might have called the Debtors as witnesses or presented other evidence about the Debtors' financial conditions from which the Court could have inferred fraudulent intent. But AmeriCash chose not to do discovery in either case and to present nothing more than it did. What was presented was wholly inadequate to establish fraud or misrepresentation and accordingly, AmeriCash cannot prevail.

Without an actionable misrepresentation, the issue of justifiable reliance by AmeriCash need not be reached. But for the sake of completeness, a brief discussion is merited. The standard for showing justifiable reliance is less demanding than that of reasonable reliance. *Ojeda*, 599 F.3d at 717. The Supreme Court has described justifiable reliance as requiring only that the creditor not "blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Field*, 516 U.S. at 71 (internal quotation marks omitted). In other words, "a creditor has no duty to investigate unless the falsity of the representation would have been readily apparent." *Ojeda*, 599 F.3d at 717 (citing *Field*, 516 U.S. at 70-71). Whether a creditor justifiably relied on a debtor's

representation "is determined by looking at the circumstances of a particular case and the characteristics of a particular plaintiff." *Id.* (citing *Field*, 516 U.S. at 71-72).

AmeriCash is a payday lender, and payday lenders are in the business of providing loans to the insolvent. Such companies charge interest rates upwards of 400%, presumably based on the high-risk nature of the transactions. They make these loans based on little more than proof of income, and not on the strength of a credit report or financial statement. Payday lenders, like AmeriCash, are almost never justified in relying on a debtor's assurances of repayment. *See EZ Loans of Shawnee, Inc. v. Hodges (In re Hodges)*, 407 B.R. 415, 419 (Bankr. D. Kan. 2009). Ms. Ferguson testified that AmeriCash relies on the representations made by applicants when giving out a loan. But she did not explain how or, more importantly, why it is that AmeriCash relies on such representations. So, even were the Court to accept that the Debtors knowingly made false representations to AmeriCash with the intent to deceive it, there is no evidence of reliance—let alone justifiable reliance—beyond Ms. Ferguson's bald assertions.

## IV. Conclusion

Because AmeriCash has failed to establish a *prima facie* case under §523(a)(2) as to either Debtor, it is not entitled to recover on its Default Motion or on the merits of its claims in either proceeding.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###